All right. Thank you very much. We're ready to hear argument on our first case, which is Hirschfeld v. Bureau of Alcohol, Tobacco and Firearms. I will say that it is Friday afternoon. We have a long docket, so this is not our only case, so if you will keep that in mind as we are watching the clock. That said, Mr. Harding, we'll be glad to hear from you. Elliot Harding Good afternoon, Your Honor, and may it please the court, my name is Elliot Harding. Here on behalf of the appellants, Mr. Hirschfeld and Ms. Marshall, in a case presenting two primary issues before the court. The first is whether these young adult citizens have Second Amendment rights at all, and the second is whether those rights are infringed by the federal prohibition on their commercial access to the quintessential self-defense weapon, namely handguns and ammunition. Keeping in line with this court's two-step inquiry pursuant to United States v. Chester, we will address first how the laws at issue do impose a burden on conduct falling within the scope of the Second Amendment, and then turn to the application of a means in scrutiny, though we continue to encourage the court to apply text, history, and tradition analysis. Judge Goldberg Well, let me ask you some preliminary questions as we set the stage here. The district court ruled that the statute in question is facially valid. I do not observe from your briefing that you challenged that ruling. Mr. Hirschfeld Your Honor, insofar as we maintain the same arguments that were presented before the district court, we do argue that they're not facially valid or valid as applied. Judge Goldberg And do you argue that specifically in your brief as to facial validity? Mr. Hirschfeld We did not specifically challenge the finding regarding facial validity by name, but by reference, we're still presenting the same arguments that were presented in the district court level. And ultimately, if the court were to find them to still be facially valid, we would believe that they would be invalid  Judge Goldberg Are you bringing an as-applied challenge? Mr. Hirschfeld Your Honor, we brought both challenges before the district court, and we've noted our objections to the court's findings in the district court level, and we've maintained those same arguments here before the circuit. Now, that being said, when considering the first step inquiry from Chester, the lower court adopted what we consider an erroneous holding from the Fifth Circuit's opinion in National Rifle Association against ATF. And it found that the Second Amendment simply does not apply to those between the ages of 18 and 21 years old, because those under 21 were considered minors at the time of ratification. Notably, this decision was a class-based decision or a status-based decision, rather than a distinction based on the class of firearm at issue, such as this court considered in Colby against Hogan, or due to the conduct itself, that being a commercial transaction. Judge Goldberg Just for clarification, I'm trying to understand if we're talking about a facial challenge or an as-applied challenge. I'm just reflecting on it. And it seems to me that I don't recall there being a record to develop the facts that would relate to the plaintiff's rights. There was no trial, no discovery. So how is it you can maintain an as-applied challenge before us, or that there is one? Your Honor, the lower court granted the defendant's, the government's, a motion to dismiss. Both parties recognized that the facts as alleged in the complaint are true. They were taken as true. And so, insofar as the complaint is taken as the factual record in this case, there was no dispute. And so, with that being said, the complaint lists a litany of allegations about Ms. Marshall and Mr. Hirschfeld's attempts to purchase new handguns from two different federally licensed firearm dealers. They were denied because of the laws at issue. And insofar as they were under 21 years old at the time, they were denied because of their age. Counsel, you do realize in almost all, if not all, of these Second Amendment-type cases, some of which are criminal 922G cases, but also civil cases, we have always required the government to present evidence, as we did in Chester, Carter, and any number of other cases. So, kind of going to Judge Winn's question, if you've agreed there's no factual dispute, how do we get to that issue when it comes to the means and scrutiny? Well, insofar as the lower court did take some findings of, you'll note there are some findings of fact insofar as the record developed from the amici parties presented some facts at argument in trial court. They were referenced in the lower court's opinion. From our purposes, and hence the facial challenge as well, on its face, we find that these are going to be unconstitutional, and they are unconstitutional laws as applied to our... Judge Richardson has a question. Counsel, whatever we call this, and I find some confusion in our case law in the Second Amendment context between facial and as applied challenges, but if we get to, and we're sort of jumping now, I think, to the second part of your argument, if we get to an intermediate scrutiny analysis, sort of accept that as a premise, you agree that the government bears the burden of establishing that there is a valid government interest and that there's an adequate fit? Yes, Your Honor. And so, and the district court below addressed that and sort of considered both the interest and the fit and gave the, you know, the government both knew that that was what was happening and had every opportunity to present whatever evidence the government chose to introduce to defend the law that's before the district court. Yes, Your Honor. Yes. And so, we're in the same spot, right, where the government has had an opportunity to meet its burden, and we can talk about whether it did or did not, but that's the burden, and then we are now trying to figure out who wins, but not a question of whether the government, you know, had a burden and whether it complied or didn't comply with the procedural obligation to address it. Yes, Your Honor. Yes. And with that being said, if the court is inclined to go into that second step at this time. Now, when you say second step, just to clarify where Judge Richardson just took us, we're talking Chester here. Yes, Your Honor. So, but you do have a first step there, and the trial court did have an opinion on that too. Yes, Your Honor. And so, if the court's inclined to continue with that first step, which is where we were starting, we will note that the finding here, the issue here, isn't whether or not the conduct or the firearm itself is protected by the Second Amendment. Here, we're talking about handguns, which have been deemed the quintessential self-defense weapon. This court's en banc decision in Colby v. Hogan put semi-automatic rifles and higher-powered weapons outside of the scope of the Second Amendment and relied on that Heller finding regarding handguns. And so, here, it's not the firearm, and it's not the conduct, but the court relied on the Fifth Circuit's opinion, finding that the classification, a class-based decision here, is what took our clients outside of the scope of the Second Amendment. And to be honest with the court, that's a very extreme finding, to find that a fundamental liberty as protected by the Bill of Rights does not apply to adult citizens, law-abiding, able-minded, adult citizens, to find that a constitutional liberty just does not apply at all. And so, with that being said, not only is that against precedent of the Supreme Court and the circuit... Does it make a difference that it has to be adult? For our purposes, we believe it does, Your Honor. I'm trying to understand the connection with the adult. Could it be a 16, 17-year-old? From a constitutional perspective, if you're no way in 1791, I wouldn't think that it made a difference. Well, we make that argument. I mean, insofar as we're not arguing on behalf of minors here today, we do concede that these individuals would have been considered minors at the time of ratification. And so, that's why we argue that the court and the government are making an argument that doesn't hold weight. They argue that, well, they were minors at the time, and therefore, they wouldn't be cloaked with these protections. But, counsel, just to understand that, Judge Wynn says, what about 16 or what about 14? You don't have to address it here, but based on the militia laws that existed at the time, there might well be a line that is at 16 instead of 18 because the militia laws typically involved those that were 16 and older. And so, potentially, although we don't have to address it here, it might be 16, it might be 18. There may be lines that exist there, but you're not challenging those questions. Correct, Your Honor. We're not arguing for anything below 18. I will state that. And that's for some very... You don't have standing to challenge anything below 18 because you don't have a client that's below 18. Exactly. Thank you, Your Honor. And we do reference the dividing line in historical times, whether it be the 1792 Militia Act that had 18, whether it be the various states that adopted similar codes for their militias at 18 that followed. We would argue that the government's reference and the court's reference to 21 years old is erroneous, not to mention adulthood has changed since these laws have passed. And that goes to the fundamental issue here that the government... Well, Mr. Harding, let me make sure. As I hear you, you are making two claims, either of which would get you where you need to go. One is that from a class perspective, you're looking at founding era protections for a certain group of citizens, which you, as I understand it, you would say would now include 18 to 21-year-olds, which it arguably did not because of the age of majority at that time, but it does now. But separately, I take it you're arguing that in the founding era, there was no prohibition on 18 to 21-year-olds possessing or acquiring a firearm, a handgun. Yes, Your Honor. The first... Those are two separate arguments. Yes, Your Honor. Yes. And just to make sure I'm following that, one is that things have changed. I get that one. The second is that what was a minor or what was a child is not an abstract idea. It depends upon the right that's being discussed. In our current day, minor may mean less than 18 to buy cigarettes, but it means less than 21 to buy alcohol. Similarly, at the time of the founding, your argument, as I understand it, is that firearm possession, whatever you say generally about who a minor was or wasn't, that firearm possession was permitted by those that were under the age of 21, whatever title was otherwise assigned to them. Yes, Your Honor. Absolutely. Two different arguments there. And one final point here is if the founders wanted to include an age limit on the Second Amendment, the founders knew how to do so. They included such limits in the body of the Constitution regarding 25 to run for office for the House, 30 to run for office for the Senate, 35 to become a president. And additionally, after that, the people, if they want to apply an age threshold via a later amendment, they know how to do so as seen in the 26th. You know what makes this so interesting is when we get beyond the language of what the actual Constitution says in the instance of a statute, start delving into what the founders thought. There's not a whole lot of folks out there that really know it. It's where is that source, but we kind of throw these things out. We know little things about militia age. We know those things. We kind of kick that in here and there. But even in this case, before you even get to the second part of this Chester test, we've got to deal with host for tests for the longstanding conditions and the qualifications on the commercial sale of this firearm. I mean, there's a first step. I think that's significant. Even before you get to this more amorphous animal that's been created out here that really delves into all kinds of history. I mean, constitutional history, I guess it would be in terms of what they thought and what they believed and where you get that source from. And I realize that's where we've gone. That's why Judge Richardson started out. This is muddled. It certainly is muddled for me from that perspective. But don't we have to talk about host for tests first? I mean, it's clearly something that's been traditional, something that's been longstanding here in terms of the qualifications on the sale of commercial firearms. Don't you think? Insofar as the court's asking whether or not these are longstanding prohibitions, we I'm not asking that question. I'm asking you, don't we have to deal with that host for tests for longstanding? Not whether or not I believe it or not, but that test is there that the longstanding conditions and qualifications on the commercial sale of firearms. It's not a question whether or not I believe it. I'm just saying that test is right there. Well, the host for tests, when taking into consideration those were private transactions done without a licensed dealer, and the court found that he had... So that's the differentiation? You're saying you don't have to do it here because it's a licensed dealer? No, I'm just recognizing a distinguishing fact, materially distinguishing factor as it related to that case. If you take that case and the test that the court's referencing now and put it in a context with the laws at issue here, if the court accepts the lower court's finding and then adopts the test and the findings from Hossford, what we've got is we're starting to relegate our clients to a completely private market that isn't protected as found on Hossford, that is devoid of any background checks, devoid of anything of the traditional nature that a federally licensed firearm dealer has to apply. Meanwhile, they can... Well, doesn't Hossford, Mr. Harding, doesn't Hossford just take you past the facial challenge? I mean, I don't know that that's particularly relevant when you get to the as-applied analysis, and it wasn't in Hossford. Agreed, Your Honor. We don't find that the Hossford test is incorporated in step one of the Chester test in this case. That's presupposing that you're presenting an as-applied challenge without facts or anything before us. I just find that so difficult. I don't understand how you get into the as-applied challenge in this type of situation. It looks clear to me, B, what you're bringing and even arguing is a facial challenge. We brought both, Your Honor. Insofar as facts are taken as true in a complaint and they don't go on challenge, that is the factual record. And to say that they weren't developed would dismiss with how 12b6 motions are viewed. So I believe that we have... Where is your prayer for relief for it then? What is your prayer for relief insofar as applied challenge? Well, you know, we stood, we were asking for an injunction. I will note that rule 54c also does afford a relief for damages. And just to be clear, the injunction you're asking for is that your clients be allowed to buy a gun from an FFL. Yes, Your Honor. Right? So that's what makes it as-applied, right? You're asking about your clients being able to get a gun. You're not concerned about somebody in Wyoming and what they may or may not be able to do. It's as-applied in the sense that it's applied to your clients. Yes, Your Honor. Absolutely. You're not trying to protect somebody in Wyoming, right? You're just representing your clients. Yes, Your Honor. Absolutely. All right. Thank you, Mr. Harding. You've got some time left on rebuttal. Ms. Trayor. Thank you. May I please record Tylan Trayor for the government? I think I'd like to begin with the court's discussion of facial versus as-applied challenges. And I know that plaintiffs have forfeited a facial challenge to these laws by not challenging the district court's analysis of whether or not this is a longstanding commercial restriction. This is precisely the type of condition or qualification on commercial sales that the Supreme Court and Heller cast no doubt on. And- So just a second. On that question, the commercial sale, every other case that I can think of that some procedural aspect to the sale, you need a license, these sorts of things, we don't typically think of bans as being a restriction on commercial sale. That's a ban, right? And so when we read Heller, it strikes me that the case is exciting and the ideas are procedural limitations, not outright bans. And we've got an outright ban here. Well, respectfully, this isn't an outright ban because as plaintiffs acknowledge, they are not prevented from acquiring a handgun. This is simply a regulation of the commercial sale of certain firearms, including handguns by federally licensed dealers. But plaintiffs are, of course, one plaintiff now has aged out of the restriction, but the other plaintiff is free to, through private sales, you're going to a gun show to acquire a handgun. And so that's very, very different from a total ban and very different from the type of ban that was at issue- Basically, they can get them just about any other way out there. You can get them as gifts. It's incredible in terms of the ways in which you can get a handgun. It's just this particular way that they are not allowed to do it. That's correct, Judge Winn. And as the legislative history reveals, Congress intended that this would be at most a minor inconvenience that minor children would be able to learn under the supervision and control of their parents, proper usage of a particularly dangerous form of firearm here, the handgun, which the legislative history exhaustively documents was disproportionately responsible for a large portion of the Commission of Very Serious Crimes by a demographic that- Counsel, can I ask the question, go back to Judge Winn's question on Hossford. In Hossford, we credited the government's justification that they needed to push people into licensed dealers in order to protect the and so that's the justification that the chief in Hossford accredited the government with. And yet, you show up and say, in essence, no, Hossford got it backwards. We can protect public safety by pushing people out of the federally licensed procedure. I have a difficult time understanding how you can make both of those arguments. It seems like to me, Hossford tells us that your argument is at least meritless, if not disingenuous. No, I very much disagree respectfully, Judge Richardson. I think if there are multiple avenues of a particular demographic being able to acquire handguns that they go on to misuse, they can't be trusted to responsibly use and therefore engage in violent crime with those avenues available to them and the government lawfully restricts one of those avenues, then I think it stands to reason that that is still getting at the underlying purpose behind the federal regime. Let me respond to the argument. Hossford says the government's interest is pushing people into a regulated system. That's going to create more safety. And that seems like a reasonable position. It's the one that our court adopted. And your argument is, as I understand it, is pushing people away from the regulated system and into the unregulated system is going to provide for more safety. And those two arguments seem inconsistent. And your response is, oh, yeah, but we can just do what we want doesn't seem very satisfactory. No, and I just want to clarify, our position is not to push individuals outside of the federal gun restrictions that exist. What's at issue here is a narrow regulation on one aspect of the commercial sale of firearms. And it is lawful because as we've, I know we haven't discussed much of the history and tradition analysis, but there's overwhelming historical evidence that this restriction accords with how the Second Amendment right was always understood, dating back to the time of the founding. I want you to get to that too. But before you go to that, I mean, is there any suggestion that, you know, the law as you've adopted it, if you have a prior conviction, or you're using drugs, or you're mentally ill, or you're under indictment, right, if you're 19, all of those things prohibit you from buying from an FFL already. And so the law here is you've got it seems to be directly designed to push to affect only law abiding 18 to 21 year olds, and to push them outside of the FFL process. Is that tell me why I'm misinterpreting what this law effectively does? You know, well, as this court has held in the Supreme Court in Heller, the Second Amendment right is not an absolute line, it is one that extends to both law abiding and responsible citizens. And so while, you know, one part of that phrase might more appropriately apply to the court went out of its way to emphasize that the right historically has also belonged to responsible citizens. And of course, we've discussed the legislative history here, the number of reasons why Congress, Congress had good reason to understand that minor children could not responsibly be trusted to responsibly handle firearms. And again, that accords with the acquisition and use of firearms. Well, why don't you tell us about those restrictions, if you would, what's what's your evidence that in the founding era, 18 to 20 year olds could not only possess, but could purchase handguns whenever they wanted? As well, as the Fifth Circuit concluded, the historical evidence is overwhelming when you're looking at all the types of historical evidence that the Supreme Court relied on in Heller, when we're looking to state legislation. Tell us what that is. I know that's what the Fifth Circuit said, but I don't recall them identifying any historical evidence that in 1791, a 19 year old couldn't go anywhere and purchase a handgun perfectly awfully. Well, I know that respectfully, I disagree the Fifth Circuit and the First Circuit in the case that involves a slightly different restriction on juveniles, but they all refer to a host of historical evidence. I know my friend on the other side seeks to rely on state and federal militia laws offensively. But actually, I think that's very important evidence only supporting our position that a number of states restricted the age at which individuals could enroll in the militia to the age of 21. And I guess in particular, if you look at Pennsylvania, as Benjamin Franklin noted... Right, right. But tell us what founding era statute or ordinance prohibited a 20 year old from purchasing a handgun. Well, there's not an exact historical analog, but that's also not required as the Fifth Circuit noted. And that's not what the Supreme Court has required in Heller. It may not be the Seventh Circuit and scoring again, the Fifth Circuit in the NRA case, there may not be an exact replicate of state law or federal law back in the founding era. But what we can do is look to a post-ratification commentary, legislation, pre and post Civil War commentators and laws. What's the best example or the best piece of evidence that you want us to use by analogy to argue that a 19 year old would have been viewed as outside the realm of the Second Amendment? Can you give me the two or three things that you think are actually helpful? Maybe list them and then you can talk about them. Sure. I'd be happy to. And as my friend on the other side noted, there's no dispute that, first of all, the 21 was the age of minority. And that's according to Blackstone, well accepted. That's got to be by reference to something, right? I mean, that's the same. That's the example of you're a minority for buying alcohol at 21, but you're a minority for buying cigarettes at 18. You're a minority for driving at 16. Yeah. I mean, by minority, it has to be by reference to something. That's right. And I think to the extent they're relevant, first of all, we could say that the militia laws support that view, setting that minimum age at the age of 21. And as gun control regulation... So I understand that's just, you have a few states that use 21, many that used 18, some that use 16. Why should we pick the few examples that you can come up with that limited it to 21 when the Federal Militia Act didn't and nor did most states? So a few answers in response to that question. One, yes, I completely agree that gun control regulation, obviously, we see more state legislatures enacting such regulation, which squarely points to a tradition of restricting acquisition and use of firearms by minors. And that's a little bit in time. But one, to the extent the militia laws are relevant, it does bear on this analysis, the fact that a number of states saw fit to restrict enrollment in militia to individuals who had reached the age of majority, 21. Counsel, that may have been relevant for the muster rules for the militia, but I don't see that it has any relevance or proof with respect to the age of purchase and sale of a firearm at that time. And the later restrictions may well go to the separate question, is this a longstanding regulation? And even if we assume that the plaintiff has forfeited his facial challenge, I don't see how that helps you at the Second Amendment coverage prong of the Chester test. So, again, just several points in response to your question, Judge Agee. One, I mean, the Supreme Court was very clear in Heller that post-ratification traditions matter. And with respect to the later in time legislation adopted by the states that all, you know, many of which restricted the acquisition of firearms to the age of 21, the widespread adoption of a certain type of regulation, the Supreme Court explained in Heller, even after the founding, this creates a strong presumption that the regulation is constitutional. And that's because you have individuals in that post-ratification period who are acting on, they're acting on and we can glean from those pieces of historical evidence what was always understood to be the Second Amendment right at the time of the founding. And so that evidence is very persuasive. I think, I just want to take a step back too and say that I don't think we need to rely on militia laws exclusively. I think there's a very big assumption baked in there that the Second Amendment right is coextensive with the right to serve in a militia. And that's not true for several reasons. I mean, the two are decoupled. They're not coextensive. That much is clear from Heller. Well, that sort of goes to the point that regardless of what the militia muster rules were, that doesn't prove anything with respect to whether or not this age group could go out and acquire perfectly legally a handgun during that period. And I have yet to hear any, wait a minute, I have yet to hear any evidence that you've cited to the contrary. Well, I guess I'd put it this way, Judge Agee. I don't think that that evidence is 100% conclusive, but to the extent it is relevant because the rights are not coextensive, we very much have to take into account, just as the Fifth Circuit did, the fact that some militia laws did set that age requirement to be at 21. At the same time, I think another reason why those laws are not 100% conclusive is going back to something that Judge Richardson brought up earlier, which is that some of these militia laws, as the Fifth Circuit noted in the NRA case, they did fluctuate at times. And sometimes- Well, this is the whole problem with the, this is the whole problem with step one of the Chester test. And even when you get into the historical analysis of it, this is a very indeterminate way in which to try to figure any of that out. You do have a step two. I mean, if it is beyond, within the scope of it, then the question of the heightened scrutiny comes into play. Is that not something that you find significant enough to argue to? It's certainly the law, the binding law of the circuit to apply a two-step analysis in this area. We think the court doesn't need to go so far as to even reach the second step because, just like the Fifth Circuit, but- Do you agree that if we do reach the second step, that you bear the burden of establishing both an interest and fit under, let's call it intermediate scrutiny? Under the law of the circuit, that's correct. The court looks to the government to fulfill its burden in engaging in a means and scrutiny analysis. But again, from our view- Counsel, that to me brings up something of a conundrum. I'm not quite sure how to resolve. When I look back at our cases, and a lot of these criminal 922G cases, and you have civil cases, even the Fifth Circuit's decision in the ATF case, those all required the government to present evidence. The Fifth Circuit was on summary judgment. So, I guess my first question is, why didn't the government bring a summary judgment motion here as opposed to a motion to dismiss? Because I'm not aware of any case in this circuit or otherwise that goes off on the motion to dismiss where the government's never presented any evidence. We did think it appropriate at the motion to dismiss stage based on the purely legal question and the overwhelming amount of historical evidence that the court could appropriately rule at step one. I think, in some ways, this takes us back to one of the first questions the court asked. When we're looking, even when we're looking at an as-applied type challenge here in the Second Amendment context, we're never looking to evidence or facts specific to the particular plaintiff. These do proceed on a categorical basis. But, again, the court doesn't even need to go that far because, as the Fifth Circuit concluded at the first step, there's a long historical tradition of restricting the acquisition and use of firearms such that the very narrow prohibition at issue here purely on the purchase. Right, but as Judge Wendt pointed out, when you're doing the historical analysis, even though some of us are a little bit older than the rest of us, none of us were around in 1791, though there may be some people that would argue the contrary. So, it is an indeterminate analysis. So, that gets us to the second prong, which is what the Fifth Circuit did in its case. So, there you had what you don't have in this case, evidence that the Your Honor is correct. We haven't addressed the second means and scrutiny analysis prong of this court's precedent. But, again, we think the best way to approach this and to uphold the law is just as the Fifth Circuit was fully prepared to. It did, of course, proceed to step two out of abundance of caution, but we think the court can easily uphold these challenge laws at step one. Do you agree, counsel, the step one, which we've been talking about? On the one hand, we're talking about evidence, right, historical information, but isn't it, since it's ultimately a legal question, isn't that able to be resolved on a motion to dismiss? I mean, this isn't a question that is a factual question in the way we think about it. We talk about evidence, but ultimately that evidence goes to a legal question, and so that's why it is appropriate to resolve it on a motion to dismiss, right? That's right, Your Honor. So, I mean, if we went, I mean, sending it back for a summary judgment on the same question doesn't, wouldn't make any difference, because the point is there's a legal question that exists, and you got to establish, you know, meet your burden either way, but it's a legal question, not a factual. That's right, Your Honor. I think that's right, and I think, yes, so if there are no further questions, we're happy to rest on our brief. Can I? One more. Two more. No, no, go ahead, Judge Wynn. Can you give me what the government's best example of a constitutional right that only applies to, you know, those over the age of 18? But, you know, we don't think about that in the First Amendment, the Fourth Amendment, the Eighth Amendment. Where would I look to find an example of another constitutional amendment or a constitutional provision? It doesn't have to be an amendment outside of the, you know, presidential age provision or the like that has an age cutoff. Well, I would have pointed the court to those age provisions that are directly in the Constitution, but I think your question is somewhat falsely premised on that. So that's, but you do agree that the presidential provision is one example of a provision where it is age limited. Yes, but I think, importantly, there's, we're getting a bit far afield of exactly the nature of the challenge law. It is not an outright ban. Plaintiffs have never alleged that they are actually unable to obtain a handgun, and so I do think that it's incorrect to treat this, to treat these challenge laws as somehow, you know, completely stripping plaintiffs of their from that. Judge Wynn, did you have a question? No, I'm good. All right. All right. Thank you, Ms. Trayor. The first of the amici is Ms. Datla. Are we in the ballpark there? That's great. Thank you, Your Honor. All right, you're on. My name is Kirti Datla, and I represent Brady. So just to maybe situate where I plan to focus in the discussion, the district court offered three different reasons to deny this challenge. Most of the discussion so far has focused on one of those reasons, which is whether the Second Amendment is implicated at all. I'd like to focus on what this court has called the streamlined analysis, under which this court will treat a law as presumptively valid if it is the kind of long-standing regulation that Heller identified. And my colleague from Giffords will discuss the application of the court's two-part framework. And just to address some of the discussion between a facial and an as-applied challenge that the judges' questions have raised, today, the streamlined analysis applies, as has already been noted, only in the context or only to resolve a facial challenge. And we would just note that reading the complaint, you might be surprised to hear that this is an as-applied challenge. And you might also be surprised reading the briefing below and the appellant's brief here, only because... But you sort of touched on where I was going with it. I am somewhat surprised to see this is an as-applied challenge, but I'm always open and learning. And so tell me, what is it, from your view, I mean, what makes it an as-applied challenge here, based upon what we have before us and based upon the allegations? I think there's two ways to look at it. Either this case would draw that, if not, identify it as a facial challenge, and you might think that looking at the relief that's sought at JA 16 through 17, which is, again, the defendant as saying that again, I couldn't hear your last sentence. I apologize. I'll speak up. So I think there are two ways to think about this. And we, as an amici, recognize that we're not parties and fully understand that. But I think one way to think about it is, this is a facial challenge because the plaintiff sought relief at JA 16 through 17. That's the from enforcing this law. The other way to think about it, which I don't want to tread on my colleague's time next, is that this is a very weak as-applied challenge because there are no allegations about how these plaintiffs are prohibited from accessing a handgun. So just having set the stage that way, I would like to address the... But can I ask a different way? So it seems when you read our cases, and I'll concede they're not a model of clarity, we seem to suggest that there are, in essence, two kinds of as-applied challenges in this context. One of which, which is not at issue here, is that even though the law is generally valid, it can't apply against me because I'm unique in some way. And that's never been permitted or has never succeeded, but at least some of our cases seem to suggest that's a possibility. But then there's a second set of as-applied challenges, which we see courts addressing, which is an individual saying, based on the record, that I should be able to buy a gun. And doing that on a sort of not facial, in the sense that a facial challenge is limited to the idea that there is nobody against whom this could ever be applied, and that's a very high bar. But as-applied just says, listen, given what I've got, here's who I am, I'm not otherwise a felon, I'm not otherwise prohibited, I ought to be able to buy a gun, right? That seems like the type of as-applied challenge we have here, not that I'm unique as-applied challenge. So I think all we have to say on this front is that the type of challenge, Your Honor, just discussed in the context of, for example, a felon in possession law would be somebody saying the specific statute or type of statute that I violated that happens to be a felony doesn't correspond to the kind of risk that the statute is identified to address. And there's nothing analogous to that kind of argument here, which maybe would be something like, my brain is more fully developed than a normal 18-year-old. I just have a really hard time understanding what those allegations would look like here. And there certainly is no effort in the complaint to establish that these plaintiffs are in a specific category within the statute that doesn't correspond to the risks that Congress identified. If I'm not mistaken, the complaint asked for an injunction generally. I'm not sure there's a specific indication of injunctive leave for either of these plaintiffs. Not that it has to take the notion of the first example that Judge Richardson gave, but at least you got to say something that applies to you as opposed to generally. That's our understanding too, Your Honor. I could just test the case for considering this a long-standing regulation that regulates the commercial sale of arms. So the way the courts have defined the word long-standing, the way it shakes out in the case is by requiring. The first is a hook in the founding era, and I don't read the cases that require the questions you have asked for, which is a specific statute on point from the founding era. And the reason I think that the courts have not required that is because there was, for example, no such statute for felon or no such statute for those who are mentally ill, and the court in Heller had no problem identifying those as long-standing. So what is required in the founding era is some higher level of generality, some regulation of the kind that we have here. And here we have that because as this court said in Carter, the Second Amendment right has always recognized and accommodated limitations for a person perceived to be dangerous. The second requirement that courts have articulated is a requirement that the particular type of law at issue have some historical basis, even if it doesn't date back to the founding. And here, as laid out extensively at the JA 51 through 71, the statutes the government collected, these statutes do. As early as 1856, Alabama and Tennessee specifically prohibited the and by 1897, 19 states. Isn't it fair to say at that point the Second Amendment didn't apply against the states? So why would we think that's like a useful data point? I mean, there's no suggestion in the 1850s that the Second Amendment applied as against the states. And so the states were, of course, free to do whatever they chose to do. Why does that help us give any insight into the Second Amendment? So the pre-ratification, the pre-ratification examples, the two statutes, Alabama and Tennessee, I think are helpful for the reason the government explained today, which is we still consider post-amendment evidence as evidence of the tradition. But after- Right, but we consider it as relevant because it suggests that what we're doing is consistent with the Constitution. But everybody would have known in 1850s that the state could enact whatever. I mean, they could just ban guns, right? I mean, at least without violating the Second Amendment. I think, Your Honor, what is helpful to answer your question is to consider what happened after ratification. So between ratification in 1897, 17 states, additional states, and the District of Columbia had statutes on the books that prohibited the sale or transfer of firearms to those under 21. And they really resembled the statutes. And when did we find that the Second Amendment was incorporated against the states? I think it would be, we think it would be, I think, an odd rule to discount any historical evidence that was pre-McDonald's. Right. Well, that's not the question Judge Richardson asked you. I'm sorry. Then I must have misunderstood. I'm good. I know we're way over time. You're done? Judge. All right. Thank you very much. We're now ready to hear from Ms. Ellis. Good afternoon, Your Honors, and may it please the court, Angela Ellis, on behalf of Giffords Law Center to Prevent Gun Violence. So if all right with Your Honors, I think I'll just go ahead and jump right into intermediate scrutiny, the second step of the Chester test. So this court has uniformly applied intermediate scrutiny to cases like this one. And the Fifth Circuit has also found that the appropriate level of scrutiny here is unquestionably intermediate scrutiny. What would be the factual basis that you would rely on here? Is it sufficient that we, the Fifth Circuit, has basically laid out facts to substantiate this? So what is that factual basis at a 12B6 stage? I think that the court can look to the legislative history, which is judicially noticeable. I think I heard the government referencing the legislative history here. And the legislative history really is extensive. And Congress, they did their job here. They undertook a multi-year inquiry. They issued detailed findings. They recorded those findings very carefully. Well, what Fourth Circuit case at a motion to dismiss stage has used only legislative history? I'm not aware of a case relying solely on legislative history, although I would, I think, Your Honor, in these means and tests that, or relying on it just as a matter of judicial notice. But I think it would be a strange result, Your Honor, to sort of allow the parties to circumvent this. Ms. Ellis, what about the case, and I apologize, I don't have in front of me the Charlottesville curfew case that Judge Wilkinson wrote. The court there addressed intermediate scrutiny and did so based, it seemed to me, to be exclusively on the, there it wasn't legislative because it was a Charlottesville ordinance, but based on the record of that ordinance. I think that's right, and I want to clarify what I said. I think that the legislative history here is more than sufficient. I was not sure and would have to look to see whether that has been relied on as a matter of judicial notice, but I think here- Well, it's the very kind of history you look at. I mean, the Shelby County case is a case in which you look to see the reason, and the facts are developed from there. They're not the specific facts that you would get in a summary judgment type thing. I would think, in most instances, that you would look in the legislative, the so-called legislative history, a word that a lot of people don't like to use in some contexts, but this is one of those areas where it is there. I mean, and Heller puts it there, so I think we have to delve in it. Are we talking about the history since 1968? Well, I think the means and tests should look at the data that Congress had in front of it when it passed the law in 1968, and it issued very extensive findings showing that minors under the age of 21 accounted for 64% of total arrests for serious crimes, 35% for serious crimes of violence. They found that handguns were the main offenders. Here's where we get into some crossover in terms of cases and how we look at them, and what you are describing is what Congress was doing, and then it comes up the question of, how does the court look at it? And then we start reasoning and said, well, that doesn't make any sense to us that you would use this and use that, and that's where it gets muddled to me on it, is to what extent do we know these facts that we take. If Congress had that, then it went with it, or do we go outside and begin to say, well, things have changed, and we see things differently, and we don't think that that policy goes anymore. We should do it differently, and that's really what we're doing, and if we're doing it, I'm okay with it, but we got to say it, and you don't get to say it, especially for Second Amendment cases, as though they have some special rule under the Constitution. This is really going into policy stuff that Congress did, and I think we need a clear clarification of what is the role of the courts here when you're delving into these policy decisions, when you're making a decision, Congress makes a decision. There's all this data stuff that you bring up that says, okay, for 21 years, we know what the deal is. People might be more violent or whatever, and we're going to enact this law. It comes to the court. We then pick it apart, and what I want to know, or at least understand, is when do we do that, and are we just limited here to Second Amendment, because I actually kind of like it to some degree, but I want to know how is it used beyond where we are now. Sure, Judge Wynn. Well, I have two responses to that. I mean, I think the first is that when a legislature passes a law, we shouldn't apply some requirement of them having the benefit of hindsight, right? So here, if we apply intermediate scrutiny, we just have to show that the law was reasonably adapted to a substantial interest, and I think that's clearly met here, but we also know from contemporary studies that, in fact, Congress was correct, right? Neuroscientific research conducted since 1968 has only confirmed the wisdom of Congress's decision, so to the extent the court is looking to what's happened since then, I think there's far more than sufficient evidence to justify the wisdom of Congress's choice. Wouldn't we have to take judicial notice of that evidence if there's abundant evidence one way or the other on it, or do we just... I'm trying to understand how do we get into that determination, because it looks a lot like a policy decision at some point, unless we're basing it on something. Well, you're right. Your Honor, there are studies in the record that Gifford submitted, and recognizing, of course, that we are an amicus party and not a party to the case, but there are such studies in the record. The district court relied on them. The Fifth Circuit has relied on similar research, and it's... Okay. I'm satisfied you've answered my question. All right. Judge Richardson? I apologize. I just want to sort of quickly... Would it be different here if you had all the same studies and legislative background, but instead of 18 to 21, it was men? So, assume for me that men commit 85% of all violent crime, and otherwise we have similar type statistics. With the same analysis, and I want to try to do this relatively briefly, would the same analysis apply? I'll try to answer that quickly. I mean, I think, Judge Richardson, that it may be that the Second Amendment analysis would be okay, but I would imagine that you would face another equal protection challenge based on... Equal protection also is intermediate scrutiny, right? So, I don't know why, but okay, fine. So, help me understand then, and this is the last part of this, is why that squares with Craig versus Boren, right? Where the Supreme Court said, you know, the disproportionate drunk driving by to outlaw young men from drinking, right? And that looks an awful lot like what we have here, right? That 18 to 21-year-olds, let's assume, disproportionately commit handgun violence. But the real answer is, it's still a tiny percentage of 18 to 21-year-olds who are committing handgun violence. Yes, they're doing it more frequently than you might expect based on population, hypothetically, but it's still a tiny proportion of 18 to 21-year-olds who are committing handgun violence. And that's exactly, it strikes me, what Craig v. Boren says doesn't pass intermediate scrutiny. So, help me understand how I get around Craig v. Boren. Well, I do think there's an important... And try to be brief. Yeah, sure. The quick answer, I think... No, of course, thank you for the question. I mean, the quick answer, I think, is that a burden based on sex would be far more severe than a burden based on age, because we all know that everyone who's 18 to 20 years old will quickly age out of this restriction. And we know that the court has permitted age-based restrictions in other contexts. So, you know, that's one distinguishing point, I think, we should keep in mind. All right. Thank you, Ms. Ellis. Mr. Harding, you have some rebuttal time. Yes, Your Honor. I just want to cover a few things that have come up quickly. First of all, insofar as the pleading and the complaint is concerned, I mentioned Rule 54C already regarding Mr. Hirschfeld having aged out. I'll just quote for the court, final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. So, insofar as it may not have been as specific or as applied versus facial considerations in the prayer for relief, we will rely on 54C for this case to proceed in several ways. I'll also note that the references to 21 years old in the militia are wrong. And footnote four on page 16 of the opening brief, every single state after the Second Amendment was ratified adopted a militia clause with 18 years old. And I'll note they were required to have their own firearms. Insofar as we talk about longstanding prohibitions, when we talk about felons or the mentally ill, I'll note that all of those come with an individualized assessment prior to falling into the status that follow through due process. This is the only type of classification where the person in the class hasn't done anything on their own to fall into it and no due process applied. Oh, Judge Richardson? That's not true for illegal drug users or illegal aliens, is it? So far as drug users are concerned, they still have to be found to have engaged in that conduct. And as far as illegal aliens... Your guy has to be found to be under 21, right? So that's not an individualized finding, is it? Well, it would be so far due process is going to attach to that. I mean, you're correct. My guy does have to be a certain age, but the drug use is an act that... And drug use is typically considered under a state act. Meaning, yes, there are certain states where an FFL can't sell it to someone that may be an alcohol abuser, such as Maryland, or an illicit drug user. But those are more state-based restrictions that tie in with the FFLs. But generally, they still have to have been found through some means of due process. And in this type of a situation, it's not an individualized assessment. Every other historical class-based restriction that doesn't require that has been struck down or would be struck down. The court mentioned men. Obviously, in the past, there were restrictions on race, ethnicity, religion, Catholics, things of these nature would all be struck down today. The only thing at the time that could be similar would be the loyalty tests back then. And it was taking away the rights of 18-year-olds and above who didn't pass the loyalty test, which inherently recognizes that 18-year-olds had the right to the Second Amendment. All right. Thank you very much, Mr. Harding. And thank you to all counsel for your arguments today. As you know, in the Fourth Circuit, it's our tradition to come down and greet you personally, which we can't do. So, consider this your virtual handshake by the panel. And with that, we will take a very short recess and come back and take up our next case. The court will take a short recess.
judges: G. Steven Agee, James A. Wynn Jr., Julius N. Richardson